

**After Recording Return To:**
RUTH RUHL, P.C.
Attn: Recording Department
12700 Park Central Drive, Suite 850
Dallas, Texas 75251

**Prepared By:**
RUTH RUHL, P.C.
12700 Park Central Drive, Suite 850
Dallas, TX 75251
877-766-6677

Parcel ID No.: 5342-00-07-6762

_____ [Space Above This Line For Recording Data] _____

Loan No.: 9350185576
Investor Loan No.: 1695882758

# LOAN MODIFICATION AGREEMENT
(Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 10th day of May, 2023, between LISA M KOCHEL and EARL KOCHEL, III ("Borrower") and Santander Bank, N.A. f/k/a Sovereign Bank ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated May 3rd, 2004, recorded June 1st, 2004, and recorded in Book/Liber 4072, Page 1228, Instrument No 43626, of the Official Records of BERKS County, Pennsylvania, and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at 268 COLORADO DR, BIRDSBORO, Pennsylvania 19508.

Original Loan Amount: $275,000.00

PENNSYLVANIA LOAN MODIFICATION AGREEMENT
(FNMA Modified Form 3179 1/01 (rev. 04/14))

Page 1 of 6

Exhibit "A"



Loan No.: 9350185576

the real property described being set forth as follows:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

  In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

  1. As of June 1st, 2023, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. $345,398.20 consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

  2. $105,474.56 of the New Principal Balance shall be deferred ("the Deferred Principal Balance") and Borrower will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $239,923.64. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of 5.750%, from May 1st, 2023. Borrower promises to make monthly payments of principal and interest of U.S. $1,278.52, beginning on the 1st day of June, 2023, and continuing thereafter on the same day of each succeeding month until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The yearly rate of 5.750% will remain in effect until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The new Maturity Date will be May 1st, 2063.

  3. Borrower agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and Security Instrument by the earliest of: (i) the date Borrower sells or transfers an interest in the Property, (ii) the date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

  4. If Borrower makes a partial prepayment of Principal, Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

  5. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument,

  If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

  6. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the specified date in paragraph No. 1 above:

   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and



Loan No.: 9350185576

    (b)    all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

7.    Borrower understands and agrees that:

    (a)    All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    (b)    All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

    (c)    Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

    (d)    All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

    (e)    Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

    (f)    Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging☐.

8.    If applicable, by this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligations to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

9.    Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such

PENNSYLVANIA LOAN MODIFICATION AGREEMENT                             Page 3 of 6
(FNMA Modified Form 3179 1/01 (rev. 04/14))



Loan No.: 9350185576

time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund Borrower any Funds held by Lender.

Loan No.: 9350185576

_____          _____(Seal)
Date                                LISA M KOCHEL                   –Borrower

_____          _____(Seal)
Date                                EARL KOCHEL, III                –Borrower

_____          _____(Seal)
Date                                                                –Borrower

_____          _____(Seal)
Date                                                                –Borrower

## BORROWER ACKNOWLEDGMENT

State of _____  §
                          §
County of _____   §

    On this, the _____ day of _____, _____, before me _____,
the undersigned officer, personally appeared LISA M KOCHEL and EARL KOCHEL, III

known to me (or satisfactorily proven) to be the person whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.
    In witness whereof, I hereunto set my hand and official seal.

(Seal)                              _____
                                    Notary Signature

                                    Notary Public
                                    Title of Officer

ACKNOWLEDGMENT (PENNSYLVANIA)                                       Page 5 of 6

Loan No.: 9350185576

Santander Bank, N.A. f/k/a Sovereign Bank _____ -Date
—Lender

By: _____

Its: _____

## LENDER ACKNOWLEDGMENT

State of §
§
County of §

On this, the _____ day of _____, _____ before me _____, the undersigned officer, personally appeared _____ who acknowledged himself/herself to be the _____ of Santander Bank, N.A. f/k/a Sovereign Bank a entity, and that he/she as such _____ being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of said entity by himself/herself as _____.

In witness whereof, I hereunto set my hand and official seal.

(Seal)

_____
Notary Signature

Notary Public
Title of Officer

"I, _____, do hereby certify that the correct address of the within named Mortgagee is 1 Corporate Drive, Suite 360, Lake Zurich, Illinois 60047. Witness my hand this _____ day of _____, _____."

Signed: _____
By: _____

ACKNOWLEDGMENT (PENNSYLVANIA)                                                                                              Page 6 of 6

EXHIBIT "A"

BEING COUNTY PARCEL NO 5342-00-07-6762

ALL THAT CERTAIN LOT OR PIECE OF GROUND SITUATE IN UNION TOWNSHIP, BERKS COUNTY, PENNSYLVANIA, BOUNDED AND DESCRIBED ACCORDING TO A FINAL PLAN OF FRENCH CREEK WOOD, DRAWN BY C L FRANTZ & ASSOCIATES, INC , ENGINEERS, SURVEYORS, AND LAND PLANNERS, DATED JUNE 29, 1988 AND LAST REVISED APRIL 17, 1995, SAID PLAN RECORDED IN BERKS COUNTY IN PLAN BOOK 218, PAGE 25, AS FOLLOWS, TO WIT:

BEGINNING AT A POINT OF CURVE ON THE NORTHERLY SIDE OF COLORADO DRIVE (50 FEET WIDE), SAID POINT BEING A CORNER OF LOT NO. 42 ON SAID PLAN, THENCE EXTENDING FRONT SAID POINT OR BEGINNING ALONG LOT NO. 242 NORTH 09 DEGREES 39 MINUTES 57 SECONDS WEST 540.83 FEET TO A POINT OF CURVE ON THE SOUTHERLY SIDE OF COLORADO DRIVE; THENCE EXTENDING ALONG SAME THE TWO FOLLOWING COURSES AND DISTANCES, (1) EASTWARDLY ALONG THE ARC OF CIRCLE CURVING TO THE RIGHT HAVING A RADIUS OF 275.00 FEET THE ARC DISTANCE OF 50.28 FEET TO A POINT OF TANGENT, AND (2) NORTH 80 DEGREES 20 MINUTES 03 SECONDS EAST 300.00 FEET TO A POINT, A CORNER OF LOT NO 40 ON SAID PLAN, THENCE EXTENDING ALONG SAME SOUTH 09 DEGREES 39 MINUTES 57 SECONDS EASE 510.49 FEET TO A POINT OF CURVE ON THE NORTHWESTERLY SIDE OF COLORADO DRIVE. !HENCE EXTENDING SOUTHWESTWARDLY AND WESTWARDLY ALONG THE NORTHWESTERLY AND NORTHERLY SIDE OF COLORADO DRIVE ALONG THE ARC OF A CIRCLE CURVING TO THE RIGHT HAVING A RADIUS OF 475.00 FEET THE ARC DISTANCE OF 195.10 FEET TO A POINT OF TANGENT ON THE NORTHERLY SIDE OF COLORADO DRIVE; THENCE EXTENDING ALONG SAME THE TWO FOLLOWING COURSES AND DISTANCES, ( 1) SOUTH 80 DEGREES 20 MINUTES 03 SECONDS WEST 110.34 FEET TO A POINT OF CURVE, AND (2) WESTWARDLY ALONG THE ARC OF A CIRCLE CURVING TO THE RIGHT HAVING A RADIUS OF 275.00 FEET THE ARC DISTANCE OF 50.28 FEET TO THE FIRST MENTIONED POINT AND PLACE OF BEGINNING.

CONTAINING 4.196 ACRES OF LAND

BEING LOT NO. 41 AS SHOWN ON THE ABOVEMENTIONED PLAN

EXHIBIT "A"

Loan No.: 9350185576

# NOTICE OF NO ORAL AGREEMENTS

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

Receipt of Notice: The undersigned hereby represents and warrants that I/we have each received and read a copy of this Notice on or before the execution of the "Loan Agreement." "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods, or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____    _____  –Borrower
Date                                LISA M KOCHEL

_____    _____  –Borrower
Date                                EARL KOCHEL, III

_____    _____  –Borrower
Date

_____    _____  – Borrower
Date

NOTICE OF NO ORAL AGREEMENTS (MULTISTATE)                                   Page 1 of 1

Loan No.: 9350185576

# CORRECTION AGREEMENT

Borrower(s): LISA M KOCHEL and EARL KOCHEL, III      Property: 268 COLORADO DR, BIRDSBORO, Pennsylvania 19508

Words used in this Agreement are defined below. Words in the singular mean and include the plural and vice versa.

"Borrower" is LISA M KOCHEL and EARL KOCHEL, III.

"Lender" is Santander Bank, N.A. f/k/a Sovereign Bank, and its successors or assigns.
"Loan" means the debt evidenced by the Note and all sums due under the Security Instrument.
"Note" means the promissory note(s) signed by Borrower in favor of Lender or any assignee of Lender.
"Security Instrument" means the Deed of Trust/Mortgage/Security Deed, signed by Borrower in favor of Lender, securing payment of the Note.

AGREEMENT TO CORRECT OR PROVIDE ADDITIONAL DOCUMENTATION OR FEES: In consideration of the Loan Modification Agreement offered by Lender in the amount of $345,398.20 , which modifies the Note and Security Instrument, and regardless of the reason for any loss, misplacement, omission, misstatement or inaccuracy in any Loan documentation, Borrower agrees as follows: If any document is lost, misplaced, omitted, misstated or inaccurately reflects the true and correct terms and conditions of the Loan, upon request of Lender (including any assignee of Lender), Borrower will comply with Lender's request to execute, acknowledge, initial and/or deliver to Lender any documentation Lender deems necessary to replace and/or correct the lost, misplaced, omitted, misstated or inaccurate document(s). All documents Lender requests of Borrower shall be referred to as "Requested Documents." Borrower agrees to deliver the Requested Documents within ten (10) days after receipt by Borrower of a written request for such replacement. Borrower does hereby agree and covenant in order to assure that the Loan documentation executed this date will enable Lender to seek insurance or guaranty from the Department of Housing and Urban Development (HUD) or Department of Veteran's Affairs (VA), if applicable, or to conform with and be acceptable to the Federal National Mortgage Association (FNMA), Federal Home Loan Mortgage Corporation (FHLMC), Government National Mortgage Association (GNMA), or any other investor.

REQUEST BY LENDER: Any request under this Agreement may be made by the Lender (including assignees and persons acting on behalf of the Lender) and shall be prima facie evidence of the necessity for same. A written statement addressed to Borrower at the address indicated in the Loan documentation shall be considered conclusive evidence of the necessity for Requested Documents.

BORROWER LIABILITY: If Borrower fails or refuses to execute, acknowledge, initial or deliver the Requested Documents to Lender more than ten (10) days after being requested to do so by Lender, Borrower understands that Lender is relying on the representations contained herein and agrees to be liable for any and all loss or damage which Lender reasonably sustains thereby including, but not limited to, all reasonable attorneys' fees and costs incurred by Lender.

This Agreement shall inure to the benefit of Lender's successors and assigns and be binding upon the heirs, devises, personal representatives, successors and assigns of Borrower.

## ACKNOWLEDGMENT OF RECEIPT

I hereby acknowledge receipt of this Correction Agreement and further acknowledge that I understand its provisions. Words used in this Correction Agreement mean and include the plural and vice versa.

_____  _____
LISA M KOCHEL        -Borrower (Date)    EARL KOCHEL, III        -Borrower (Date)


_____  _____
                     -Borrower (Date)                             -Borrower (Date)

CORRECTION AGREEMENT                                                        Page 2 of 2

Loan No.: 9350185576

# ATTORNEY SELECTION NOTICE

By signing below, it is understood and agreed that you may hire a lawyer or attorney to advise you regarding this transaction and its consequences.

_____    _____
Date                                                         LISA M KOCHEL                       –Borrower


_____    _____
Date                                                         EARL KOCHEL, III                    –Borrower


_____    _____
Date                                                                                                         –Borrower


_____    _____
Date                                                                                                         – Borrower


ATTORNEY SELECTION NOTICE -MULTISTATE                                              Page 1 of 1



# Terms and Conditions of Modification

LISA M KOCHEL
EARL KOCHEL, III
268 COLORADO DR
BIRDSBORO PA 19508

LOAN: 9350185576

| | |
|---|---|
| Existing Interest Rate: | 5.7500% |
| Modified Interest Rate: | 5.7500% |
| Maturity date of existing Mortgage: | 12/01/2053 |
| New maturity date of modified Mortgage: | 05/01/2063 |
| Existing principal balance as of NOVEMBER 1ST 2019 | $236,384.68 |
| Additions to principal balance: | |
|    Accrued interest up to modification effective date: | $47,846.06 |
|    Escrow Advanced/Due: | $51,249.99 |
|    Prior Deferment: | $10,227.47 |
| Reductions: | |
|    Amount Held in Suspense/Restricted Escrow: | ($310.00) |
|    Less Deferred Principal Balance due at Maturity: | ($105,474.56) |
| Amortizing Balance: | $239,923.64 |
| New Modified Monthly Payment of Principal and Interest: | $1,278.52 |
| Estimated Monthly Escrow Payment for Taxes and/or Insurance: | $1,221.64 |
| Estimated Monthly Escrow for Escrow Shortage: | $167.49 |
| TOTAL New Modified Monthly Payment: | $2,667.65 |
| Be advised that your monthly payment amount is going from $2,602.75 to $2,667.65 | |
| *Please see Modification Documents. | $2,667.65 |
| JUNE 1ST 2023 payment, due JUNE 1ST 2023: | $2,667.65 |
| TOTAL CASH DUE FROM MORTGAGOR (S): | |

Please review all of the above information carefully, if you are in agreement with the terms as stated above please acknowledge same by signing and dating this form. This executed form must be returned with the executed modification agreement in order to be processed.

Mortgagor(s):

_____    _____
LISA M KOCHEL                                            Date

_____    _____
EARL KOCHEL, III                                         Date

